642 N.E.2d 781 (1994)
267 Ill. App.3d 1009
204 Ill.Dec. 880
The PEOPLE of the State of Illinois, Respondent-Appellee,
v.
Bennie CUNNINGHAM, Petitioner-Appellant.
Nos. 1-92-4391, 1-93-0495.
Appellate Court of Illinois, First District, Fifth Division.
October 28, 1994.
Rehearing Denied January 23, 1995.
*783 Thomas Peters, Chicago, for appellant.
Jack O'Malley, State's Attorney, Chicago (Renee Goldfarb, James E. Fitzgerald, Jon King, of counsel), for appellee.
Justice COUSINS, delivered the opinion of the court:
Following the affirmance, on appeal, of his conviction and subsequent sentence for an extended term of 70 years for murder, 30 years for attempted murder, and 15 years for attempted armed robbery, petitioner, Bennie Cunningham, filed a post-conviction petition under the Post-Conviction Hearing Act (Ill. Rev.Stat.1991, ch. 38, par. 122-1 et seq. (now codified, as amended as 725 ILCS 5/122-1 et seq. (West 1992))) alleging that his constitutional rights were violated during his trial and direct appeal in that: (1) the wrong constitutional standard was applied in assessing the admissibility of an extrajudicial third party confession under the declarations against penal interest exception to the hearsay rule, (2) petitioner was denied effective assistance of counsel at trial because his trial attorney did not assert that the extended term sentencing statute authorizing a sentence to a term of years for "brutal and heinous behavior" was unconstitutional as applied to petitioner, and (3) petitioner was denied effective assistance of appellate counsel because his counsel on direct appeal did not argue that the language of the extended term sentencing statute was unconstitutional as applied to petitioner. In a motion to dismiss the petition, the State argued that (1) the correct constitutional standard as dictated by case law at that time was applied in determining the admissibility of the third party confession and even if the standard articulated in People v. Bowel (1986), 111 Ill.2d 58, 67, 94 Ill.Dec. 748, 488 N.E.2d 995, had been applied, this court nevertheless would have concluded that the confession was inadmissible, (2) the newly discovered evidence does not cure the unreliability of the third party confession nor satisfies the requirements for the admissibility of newly discovered evidence and, in any event, the new evidence is hearsay, (3) this court's consideration of the propriety of the sentencing statute's applicability to petitioner on direct appeal operates as res judicata and thus bars any subsequent consideration of that issue under a constitutional veil of a claim for ineffective assistance of counsel, and (4) assuming that a claim for ineffective assistance of counsel is not barred, such an action in the present case is without merit because the language of the extended term sentencing statute is constitutionally valid on its face and as it was applied to petitioner. The trial court dismissed the petition. Petitioner appeals.
We affirm.

BACKGROUND
Following a jury trial in the circuit court of Cook County, petitioner, Bennie Cunningham was convicted of the murder of Suhalia Matariyeh, the attempted murder of Kahlil Matariyeh, and the attempted armed robbery of Tina's food and liquor store which was operated by the Matariyeh family. After a determination by the trial court that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill.Rev.Stat.1981, ch. 38, par. 1005-5-3.2(b)(2), petitioner was sentenced to an extended term of 70 years for murder as well as a term of 30 years for attempted murder and 15 years for attempted robbery, all terms to be served concurrently. On direct appeal to this court, petitioner's conviction and subsequent sentence for each offense was affirmed. (See People v. Cunningham (1984), 130 Ill.App.3d 254, 85 Ill.Dec. 138, 473 N.E.2d 506.) The Supreme Court of Illinois denied petitioner's request for leave to appeal. (See People v. Cunningham (1985), 102 Ill.2d 556 (April 2, 1985), No. 61343.) *784 Petitioner later filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois which was dismissed by that court and the United States Court of Appeals for the Seventh Circuit subsequently affirmed the district court's decision. (See Cunningham v. Peters (7th Cir.1991), 941 F.2d 535.) Petitioner subsequently filed a petition in the case sub judice under the Post-Conviction Hearing Act (Ill.Rev.Stat.1991, ch. 38, par. 122-1 et seq. (now codified, as amended, as 725 ILCS 5/122-1 et seq. (West 1992))).
Since petitioner does not maintain that his conviction was not supported by the evidence, the facts relating to the underlying crimes involved in the present case will not be set out here. Rather, the salient facts will be discussed as they are germane to the issues on review. Moreover, it is well established that a post-conviction proceeding is not one wherein a petitioner's guilt or innocence is assessed, but rather it is a new proceeding which examines the constitutional phases of the original conviction which have not previously been determined. See People v. Flowers (1990), 138 Ill.2d 218, 238, 149 Ill.Dec. 304, 561 N.E.2d 674; People v. Gaines (1984), 105 Ill.2d 79, 87, 85 Ill.Dec. 269, 473 N.E.2d 868.

OPINION

I
Initially, petitioner contends that the post-conviction trial court erred in dismissing his claims regarding the admissibility in his initial trial of a statement made by one Vincent Yoakum [sic] to a defense investigator and two attorneys that he (Yoakum [sic]) and two other men were the gunmen in the March 12, 1981 shooting at Tina's food and liquor store and that petitioner was not involved. Petitioner argues that this court applied the incorrect constitutional standard of admissibility when it determined that the testimony of the defense investigator as to Yoakum's [sic] statement was inadmissible under the declarations against penal interest exception to the hearsay rule (see Cunningham, 130 Ill. App.3d at 264-65, 85 Ill.Dec. 138, 473 N.E.2d 506 (interpreting Chambers v. Mississippi (1973), 410 U.S. 284, 300-01, 93 S.Ct. 1038, 1048-49, 35 L.Ed.2d 297, 311-12, to require the presence of four objective indicia of trustworthiness for the admissibility of declarations against penal interest)), and that if this court had applied the correct standard (see Bowel, 111 Ill.2d at 67, 94 Ill.Dec. 748, 488 N.E.2d 995 (holding that the four factors enumerated in Chambers were "to be regarded simply as indicia of trustworthiness and not requirements of admissibility"), this court would have reversed the trial court's determination that the statement was inadmissible. In addition, petitioner maintains that the post-conviction trial court erroneously rejected an affidavit of one Burnette Cowart which would have established that at some point in March, 1981, one Floyd Murray, an intimate friend of Miss Cowart, came to see her and told her that he (Floyd Murray) and Vincent Yoakum [sic] "had tried to stick up an Arab liquor store." Petitioner posits that the affidavit sufficiently corroborates the statement by Vincent Yoakum [sic] so as to enhance its reliability to the requisite level of trustworthiness to merit its admissibility under the constitutional standard articulated in Bowel, 111 Ill.2d at 67, 94 Ill.Dec. 748, 488 N.E.2d 995.
The State, however, responds that the trial court in the post-conviction proceeding properly dismissed petitioner's claims regarding the admissibility of Yoakum's [sic] statement because this court, in petitioner's initial appeal, applied the constitutional standard dictated by case law at that time. The State maintains that the standard articulated in Bowel cannot be applied retroactively to petitioner and that, even under the standard now applicable, Yoakum's [sic] statement lacks the requisite indicia of reliability to be admissible. The State further argues that the post-conviction trial court properly dismissed petitioner's claims based upon Miss Cowart's affidavit because the affidavit neither provides the requisite indicia of trustworthiness for the admissibility of Yoakum's [sic] confession nor complies with the rules governing the admissibility of newly discovered evidence.
Prior to our supreme court's declaration in Bowel, Illinois courts interpreted Chambers to constitutionally require the *785 presence of the following four objective indicia of trustworthiness as a precondition for admitting statements under the declarations against penal interest exception to the hearsay rule: (1) the statement was made spontaneously or shortly after the crime to a close acquaintance; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (See, e.g., People v. Tate (1981), 87 Ill.2d 134, 143-45, 57 Ill.Dec. 572, 429 N.E.2d 470; People v. Craven (1973), 54 Ill.2d 419, 427-29, 299 N.E.2d 1, 5-6; People v. Newell (1985), 135 Ill.App.3d 417, 427, 90 Ill.Dec. 327, 481 N.E.2d 1238; People v. Nally (1985), 134 Ill.App.3d 865, 871-72, 89 Ill. Dec. 630, 480 N.E.2d 1373; Cunningham, 130 Ill.App.3d at 264-65, 85 Ill.Dec. 138, 473 N.E.2d 506; People v. Garza (1981), 92 Ill. App.3d 723, 736, 48 Ill.Dec. 44, 415 N.E.2d 1328.) In Bowel, however, our supreme court held that the four factors which the United States Supreme Court enumerated in Chambers were merely guideposts of reliability and the true test is whether the declaration was made under circumstances demonstrating considerable assurance as to its reliability as measured by objective indicia of trustworthiness. See Bowel, 111 Ill.2d at 67, 94 Ill.Dec. 748, 488 N.E.2d 995.
We disagree with petitioner's contention that Bowel should be applied retroactively to a collateral post-conviction proceeding. In Flowers, 138 Ill.2d at 237, 149 Ill.Dec. 304, 561 N.E.2d 674, our supreme court embraced the holding of the United States Supreme Court in Teague v. Lane (1989), 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334, 353; and stated that:
"decisions establishing new constitutional rules of criminal procedure are not to be applied retroactively to cases pending on collateral review unless the new rule either (1) places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty."
We believe that an application of Flowers indicates that Bowel should not be applied retroactively to petitioner. In particular, according to Flowers, a new rule should not apply retroactively to post-conviction, hearings on collateral review. See Flowers, 138 Ill.2d at 237-42, 149 Ill.Dec. 304, 561 N.E.2d 674.
Petitioner, however, contends that no new rule was established in Bowel. He argues that the holding in Bowel was reached after reviewing the United States Supreme Court's holding in Chambers which was not new when his first appeal was decided, but rather had been misconstrued by the Illinois courts prior to Bowel to require the presence of the four aforementioned indicia of trustworthiness relied upon in Chambers. (See Newell, 135 Ill.App.3d at 427, 90 Ill.Dec. 327, 481 N.E.2d 1238; Nally, 134 Ill.App.3d at 871-72, 89 Ill.Dec. 630, 480 N.E.2d 1373; Cunningham, 130 Ill.App.3d at 264-65, 85 Ill.Dec. 138, 473 N.E.2d 506; Garza, 92 Ill. App.3d at 736, 48 Ill.Dec. 44, 415 N.E.2d 1328.) Petitioner posits that Bowel did not establish a new rule but merely interpreted existing laws correctly.
We find, however, that there is no merit in petitioner's contention in this regard. In Flowers, our supreme court held that even though a decision is doctrinally consistent with existing law, it is a new rule where it is the first time that those legal principles have been applied to the specific situation of the case at bar. (Flowers, 138 Ill.2d at 240, 149 Ill.Dec. 304, 561 N.E.2d 674.) The court stated that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) (Flowers, 138 Ill.2d at 240, 149 Ill.Dec. 304, 561 N.E.2d 674, quoting Teague, 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349.) Similarly, in the present case, while Bowel was doctrinally consistent with existing constitutional standards regarding the declaration against penal interest exception to the hearsay rule, it was the first time that our supreme court held that the four factors enumerated by the Chambers court are not requirements of admissibility. See Flowers, *786 138 Ill.2d at 240, 149 Ill.Dec. 304, 561 N.E.2d 674.
Even assuming arguendo that the standard of admissibility articulated in Bowel is applicable to the case at bar, upon an examination of the record, we conclude that even under that standard, Yoakum's [sic] statement was untrustworthy. Bowel's liberalization of the constitutional standard for admitting extra judicial statements under the declarations against penal interest exception to the hearsay rule did not disturb the constitutional requirement that the "declaration was made under circumstances that provide `considerable assurance' of its reliability by objective indicia of trustworthiness," (Bowel, 111 Ill.2d at 67, 94 Ill.Dec. 748, 488 N.E.2d 995, citing Chambers, 410 U.S. at 300-01, 93 S.Ct. at 1048-49, 35 L.Ed.2d at 311-12) nor did the court suggest that the satisfaction of any of the factors enumerated in Chambers warrants a statement's admissibility. (See People v. Carson (1992), 238 Ill.App.3d 457, 463, 179 Ill.Dec. 531, 606 N.E.2d 363.) As this court stated in Carson,
"Just as Bowel does not require all four of its suggested criteria to be present to find a statement trustworthy, the opposite is also true: that simply because one or more of the four indicia are present does not make a statement trustworthy. [Citations.] It is for the trial court to determine by the totality of the circumstances whether it considers the extrajudicial to be trustworthy, and its determination will not be reversed absent an abuse of discretion. [Citations.]" Carson, 238 Ill.App.3d at 463, 179 Ill.Dec. 531, 606 N.E.2d 363.
As this court noted in petitioner's direct appeal, Yoakum's statement was not made shortly after the crime had been committed, but rather 17 months later to a defense investigator. (See Cunningham, 130 Ill. App.3d at 264, 85 Ill.Dec. 138, 473 N.E.2d 506.) Aside from the time factor, it is significant that a defense investigator to whom Yoakum made the statement is one with a direct interest in the case thus making the statement's trustworthiness less likely. (See Nally, 134 Ill.App.3d at 871, 89 Ill.Dec. 630, 480 N.E.2d 1373.) In addition, the record reveals no corroboration of the statement by any other evidence, but, rather, that the prosecution presented evidence that eight days before Yoakum's [sic] alleged statement, he (Yoakum [sic]) told a sheriff's investigator and an assistant State's Attorney that co-defendant Wallace had approached him in the county jail and asked him to provide a false alibi saying that he (Yoakum [sic]) was responsible for the attempted armed robbery and murder at Tina's food and liquor which he refused to do. (See Cunningham, 130 Ill.App.3d at 264, 85 Ill.Dec. 138, 473 N.E.2d 506.) Moreover, aside from Yoakum's [sic] unavailability for cross-examination, the trial court had other evidence before it that suggested petitioner's culpability, such as the testimony of three eyewitnesses who identified petitioner. (See Cunningham, 130 Ill. App.3d at 256-57, 85 Ill.Dec. 138, 473 N.E.2d 506.) As a result, we hold that, even under the Bowel standard, the trial court did not abuse its discretion in determining that the statement was untrustworthy.
We also agree with the trial court's dismissal of petitioner's post-conviction petition based upon the affidavit of Burnette Cowart. It is well established that applications for a new trial based upon newly discovered evidence are disfavored by the courts and will be subjected to the closest scrutiny. (See People v. Waldroud (1987), 163 Ill.App.3d 316, 319, 114 Ill.Dec. 468, 516 N.E.2d 623; People v. Johnson (1986), 148 Ill.App.3d 163, 171, 105 Ill.Dec. 402, 504 N.E.2d 502.) The burden is on the movant to rebut the presumption that the verdict is correct and to demonstrate no lack of diligence. (See Waldroud, 163 Ill.App.3d at 319, 114 Ill.Dec. 468, 516 N.E.2d 623; Johnson, 148 Ill.App.3d at 171-72, 105 Ill.Dec. 402, 504 N.E.2d 502.) The matter is largely within the discretion of the trial court and the trial court's determination will not be disturbed on review absent a manifest abuse of discretion. (See Waldroud, 163 Ill.App.3d at 319, 114 Ill.Dec. 468, 516 N.E.2d 623; Johnson, 148 Ill.App.3d at 171-72, 105 Ill.Dec. 402, 504 N.E.2d 502.) In Illinois, the standard for a new trial predicated upon newly discovered evidence is comprised of three elements: (1) the evidence must be of such a conclusive character that it will probably change the *787 result on retrial; (2) the evidence must be material to the issue and not merely cumulative; and (3) the evidence must have been discovered since the trial and not have been discoverable prior to trial by the exercise of due diligence. (See Waldroud, 163 Ill. App.3d at 319, 114 Ill.Dec. 468, 516 N.E.2d 623; Johnson, 148 Ill.App.3d at 171-72, 105 Ill.Dec. 402, 504 N.E.2d 502.) Here, the trial court dismissed petitioner's claim based upon the affidavit of Miss Cowart because of a lack of diligence in obtaining the statement. In so doing, the trial court stated the following:
"The Court has reviewed the affidavit submitted by Burnette Cowart. The Court must consider it with reference to the issue raised previously, that concerning a third party confession to the defense investigator. That alleged third party confession was 17 months after the offense. The Appellate Court held there was no corroboration of that. This affidavit is made some 11 years after the incident. The individual in the affidavit indicates that she was a girlfriend of Floyd Murray who is a friend of Yoakum [sic]. Now the defense investigator was apparently able to locate this Yoakum [sic] individual. There is no showing the defense investigator was unable to locate Burnette Cowart. There is no affidavit before the court of the investigator as to Cowart. And the Court has the opinion that this is not newly discovered evidence. * * * It's not newly discovered evidence. It's not the basis for a new trial and post conviction hearing."
In their respective briefs and at oral argument, the parties agree that the trial court's disposition of this issue was based upon the petitioner's lack of diligence. We agree.
Without considering the other elements, it is clear that petitioner has not demonstrated that Miss Cowart's statement could not have been discovered prior to trial by the same type of investigation made in obtaining Yoakum's [sic] statement. The fact that Miss Cowart, in her affidavit states that "I did not see or hear from [Murray] for a long time and I was unaware that anyone was arrested for the shooting at Tina's Food and Liquors" does not change the standard for a new trial based upon newly discovered evidence which places the burden on petitioner to demonstrate that Miss Cowart's statement could not have been discovered prior to trial by the exercise of due diligence. (See Waldroud, 163 Ill.App.3d at 319-320, 114 Ill.Dec. 468, 516 N.E.2d 623.) Moreover, Miss Cowart's affidavit is defective because it is not accompanied by petitioner's affidavit showing his lack of prior knowledge of this evidence and his diligence in obtaining it as well as affidavits of witnesses who would testify concerning the new evidence; nor does petitioner attempt to explain the absence of those affidavits. (See Waldroud, 163 Ill.App.3d at 320, 114 Ill.Dec. 468, 516 N.E.2d 623.) Accordingly, we conclude that the trial court correctly determined that Miss Cowart's affidavit was not admissible as newly discovered evidence.

II
Next, petitioner contends that he was denied effective assistance of appellate counsel because of his attorney's failure to challenge on direct appeal the facial validity of the language of the extended term sentencing statute under which he was sentenced and the constitutionality of that language as it was applied to him. Petitioner argues that the statutory language which provides that a court may impose an extended term sentence if it finds "that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill.Rev.Stat. 1981, ch. 38, par. 1005-5-3.2(b)(2); see Cunningham, 130 Ill.App.3d at 268, 85 Ill.Dec. 138, 473 N.E.2d 506) is unconstitutionally vague because it does not sufficiently narrow the definition of aggravating circumstances which would make a defendant eligible for an extended term sentence. (See Maynard v. Cartwright (1988), 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372.) Petitioner further maintains that his conduct falls wholly outside of the language of the extended term sentencing statute and, as a result, he was denied effective assistance of appellate counsel since his appellate counsel failed to challenge the constitutionality of the language as it was applied to him. Petitioner posits that if his appellate counsel had raised these issues *788 on direct appeal, his sentence would have been overturned.
The State, however, contends that the post-conviction trial court properly determined that the consideration of this issue on direct appeal operates as res judicata as to this issue, and that petitioner waived arguments that could have been presented but were not presented. (See Gaines, 105 Ill.2d at 87-88, 85 Ill.Dec. 269, 473 N.E.2d 868.) The State further argues that even assuming arguendo that review of this issue is proper, petitioner's contention that he was denied effective assistance of appellate counsel is without merit because challenges to the statutory language on vagueness grounds have been consistently rejected because the statute employs commonly understood words which provide sufficient warning of the conduct which qualifies for the imposition of an extended term sentence. (See People v. LaPointe (1981), 88 Ill.2d 482, 500, 59 Ill.Dec. 59, 431 N.E.2d 344; People v. Gant (1992), 233 Ill.App.3d 936, 946, 175 Ill.Dec. 72, 599 N.E.2d 1086; People v. Rainge (1991), 211 Ill.App.3d 432, 456, 155 Ill.Dec. 918, 570 N.E.2d 431; People v. Bryant (1990), 202 Ill.App.3d 290, 308-09, 147 Ill.Dec. 590, 559 N.E.2d 930; People v. Page (1990), 193 Ill. App.3d 467, 471-72, 140 Ill.Dec. 612, 550 N.E.2d 248; People v. Barnhill (1989), 188 Ill.App.3d 299, 307-09, 135 Ill.Dec. 627, 543 N.E.2d 1374.) The State also posits that the evidence reveals that petitioner's conduct falls within the scope and meaning of the extended term sentencing statute and, as a result, the language was constitutional as it was applied to petitioner. We agree.
In Illinois, it is well established that the determinations of a reviewing court on a direct appeal from a conviction are res judicata as to all issues raised, and issues that could have been presented but were not are deemed waived in a post-conviction proceeding. (See Gaines, 105 Ill.2d at 87-88, 85 Ill.Dec. 269, 473 N.E.2d 868.) On direct appeal, petitioner argued that the trial court abused its discretion in sentencing him to an extended term of 70 years, under the language of the statute, for the murder of Suhalia Matariyeh. (See Cunningham, 130 Ill. App.3d at 267-68, 85 Ill.Dec. 138, 473 N.E.2d 506.) Although petitioner did not argue that the extended term sentencing statute was unconstitutional on direct appeal, such an argument certainly falls within the rubric of the propriety of the extended term statute's applicability to petitioner. As a result, our decision in Cunningham, 130 Ill.App.3d at 268, 85 Ill.Dec. 138, 473 N.E.2d 506, operates as res judicata and bars the relief petitioner seeks.
However, even assuming, arguendo, that review of this issue is proper, we find that there was no ineffective assistance of appellate counsel in petitioner's direct appeal because the language of the extended term sentencing statute is not unconstitutionally vague and that language is constitutional as it was applied to petitioner. The standard for determining whether there has been ineffective assistance of counsel is essentially a two-pronged inquiry. (See People v. Nilsson (1992), 230 Ill.App.3d 1051, 1054, 172 Ill.Dec. 634, 595 N.E.2d 1304.) The petitioner must demonstrate that (1) his counsel's performance fell well below an objective standard of reasonableness, and (2) but for his counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. (Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; Nilsson, 230 Ill.App.3d at 1054, 172 Ill.Dec. 634, 595 N.E.2d 1304.) Our supreme court embraced the Strickland test in People v. Albanese (1984), 104 Ill.2d 504, 526-27, 85 Ill.Dec. 441, 473 N.E.2d 1246. In considering claims of ineffective assistance of appellate counsel, our supreme court has recognized that counsel on appeal is not under an obligation to raise every conceivable argument, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that counsel's judgment in this regard was patently erroneous. (See People v. Collins (1992), 153 Ill.2d 130, 140, 180 Ill.Dec. 60, 606 N.E.2d 1137.) In order to support a claim of ineffective assistance of appellate counsel in a post-conviction proceeding, a petitioner must establish substantial prejudice which probably affected the outcome of his case. People v. Mendez (1991), 221 Ill.App.3d 868, 873-74, 164 Ill.Dec. 321, 582 N.E.2d 1265.
*789 We find, on both prongs of the Strickland test, no merit to petitioner's contention that he was denied effective assistance of appellate counsel. Petitioner was sentenced to an extended term of 70 years under section 5-5-3.2(b)(2) of the Unified Code of Corrections (Ill.Rev.Stat.1981, ch. 38, par. 1005-5-3.2(b)(2)) which provides for an extended term sentence when the trial judge finds that "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (See Cunningham, 130 Ill.App.3d at 268, 85 Ill.Dec. 138, 473 N.E.2d 506.) Petitioner's reliance upon death penalty cases for the proposition that this statutory language is unconstitutionally vague (see Lewis v. Jeffers (1990), 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606; Walton v. Arizona (1990), 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511; Maynard v. Cartwright (1988), 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372; Zant v. Stephens (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235; People v. Tye (1991), 141 Ill.2d 1, 152 Ill.Dec. 249, 565 N.E.2d 931; People v. Terrell (1989), 132 Ill.2d 178, 138 Ill.Dec. 176, 547 N.E.2d 145) has been rejected by Illinois courts in nondeath penalty cases. (See Page, 193 Ill. App.3d at 471-72, 140 Ill.Dec. 612, 550 N.E.2d 248; Barnhill, 188 Ill.App.3d at 307-09, 135 Ill.Dec. 627, 543 N.E.2d 1374.) In Barnhill, the court specifically held that the words used in the aforementioned statutory language are commonly understood terms giving the trier of fact "sufficient warning and understanding as to the type of murder which qualifies for imposition of a natural life sentence." (Emphasis added.) (Barnhill, 188 Ill.App.3d at 309, 135 Ill.Dec. 627, 543 N.E.2d 1374.) In so doing, the court in Barnhill found that since the death penalty was qualitatively different from life imprisonment, the proposition that the statutory language at issue is unconstitutionally vague is limited to death penalty cases:
"We do not find that Maynard is applicable in this case as Maynard is a death penalty case where the case sub judice is not. It has been held that capital punishment cases are a separate entity from all other cases, i.e., that `the penalty of death is qualitatively different from a sentence of imprisonment, however long.' [Citation]
The United States Supreme Court went on in Woodson to say:
`Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.' [Citation]
Because capital cases have been accorded a more stringent consideration, we cannot consider Maynard as guiding in this case." (Barnhill, 188 Ill.App.3d at 309, 135 Ill. Dec. 627, 543 N.E.2d 1374; see Woodson v. North Carolina (1976), 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944, 961.)
As a result, the representation of petitioner's appellate counsel cannot be considered to be insufficient in this regard.
We also find no merit to petitioner's argument that he was denied effective assistance of appellate counsel because of his attorney's failure to attack the constitutionality of the above stated language of the extended term sentencing statute as it was applied to petitioner. Relative to petitioner's contention that the language of section 5-5-3.2(b)(2) is unconstitutionally vague, we must determine if the application of that statutory language to the facts in this case produces an unconstitutional result, i.e., that the provision is vague on an "as applied" basis. (See Barnhill, 188 Ill.App.3d at 310, 135 Ill.Dec. 627, 543 N.E.2d 1374.) The facts and circumstances in this case reveal that petitioner's conduct falls within the scope and meaning of the statutory language. As this court stated in reviewing petitioner's direct appeal:
"we believe the trial court justifiably could have foundas it apparently didfrom the evidence that the shotgun was fired before Kahlil drew his gun, and that his misdirected shot was the result of his being wounded. We cannot say, considering the totality of the circumstances here, that the actions of defendants did not constitute exceptionally brutal or heinous behavior indicative of wanton cruelty." (Emphasis added) Cunningham, 130 Ill.App.3d at 268, 85 Ill.Dec. 138, 473 N.E.2d 506.

*790 III
Petitioner's final contention is that, for the reasons asserted previously in his claim for ineffective assistance of appellate counsel, his extended term sentence is void and must be vacated and a sentence within the 20-40 year (non-extended) range must be imposed. However, since we conclude that petitioner was not denied effective assistance of appellate counsel because of his appellate counsel's failure to constitutionally challenge the facial and as applied validity of the statutory language, we find no merit to petitioner's final contention.
For all of the foregoing reasons, the judgment of the trial court is affirmed.
Affirmed.
GORDON and McNULTY, JJ., concur.